KURT W. SCHUETTINGER ESQ.
(Pro Hac Vice Pending)
Kschuettinger@Bates-Bates.com
BATES & BATES, LLC
1890 Marietta Blvd NW
Atlanta, Georgia 30318
Phone   (404) 228-7439
Fax      (404) 963-6231

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ARMADILLO DISTRIBUTION ENTERPRISES, INC., a Florida corporation, and DOES 1 through 10,<br><br>Defendant. | Civil Action No. 1:19-mc-00508-LTS |

**GIBSON BRANDS, INC. OPPOSITION TO JAM INDUSTRIES USA, LLC'S MOTION TO QUASH GIBSON'S SUBPOENA**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ANALYSIS AND ARGUEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.        Gibson's Subpoena Seeks Information Relevant to Armadillo's Genericide and Laches Claims and Defenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

2.        Gibson's Subpoena Does Not Impose an Undue Burden on JAM. . . . . . . . . . 7

3.        Any Confidential Information Can Be Submitted Under the Protective Order in *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.* . . . . . . . . . . . . . . . 10

4.        This Court Should Hold JAM in Contempt and Issue Sanctions for Failing to Appear at the Properly Noticed Deposition. . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

## **CASES**

*ABF Capital Mgmt. v. Askin Capital*
No. 95-8905, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Amphenol Corp. v. Fractus S.A.*
No. 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams*
262 F.R.D. 293, 300 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Armadillo Distribution Enterprises, Inc., et. al. v. Washburn International, Inc.*,
United States District Court, Middle District of Florida, Case No. 8:02-cv-01703-T-27Map. . . . . . . 4

*Chambers v. NASCO, Inc.*
501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chesa International, Ltd. v. Fashion Associates, Inc.*
425 F.Supp. 234, 237 (S.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cipollone v. Liggett Group Inc.*
106 F.R.D. 573, 585-86 (D.N.J. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Coffeyville Res. Ref. Mktg. LLC v. Liberty Surplus Ins. Corp.*
No. 08-00017, 2008 U.S. Dist. LEXIS 91224, at *5 (E.D. Ark. Nov. 6, 2008) . . . . . . . . . . . . . . . . . .8

*Condit v. Dunne*
225 F.R.D. 100, 105 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gotham Holdings, LP v. Health Grades, Inc.*
580 F.3d 664, 665 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Griffith v. United States*
No. M8-85, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Johnson Foils, Inc. v. Huyck Corp.*
61 F.R.D. 405, 410-11 (N.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Kelly v. Old Dominion Freight Line, Inc.*
376 Fed. Appx. 909, 913 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Hepperle v. Johnston*
590 F.2d 609, 613 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kirschner v. Klemons*
No. 99 Civ. 4828, 2005 WL 1214330, (S.D.N.Y. May 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .3,7

*Koninlike Philips Elec. N.V. v. KXD Tech., Inc.*
2007 WL 3101248, at *18 (D. Nev. 2007) ................................................... 13

*Melendez v. Greiner*
No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) ......................... 2

*Night Hawk Ltd. v. Briarpatch Ltd*
No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) ................... 3

*Oppenheimer Fund, Inc. v. Sanders*
437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ..................................... 2

*Pioche Mines Consol., Inc. v. Dolman*
333 F.2d 257, 269 (9th Cir. 1964) ........................................................ 13

*Revson v. Cinque & Cinque, P.C.*
221 F.3d 71, 78 (2d Cir. 2000) ........................................................... 12

*Scoville Manufacturing Co. v. Sunbeam Corp.*
61 F.R.D. 598, 602 (D. Del. 1973) ........................................................ 11

*Shaw v. Arena*
17 Misc. 448, 2018 WL 324896, at *1 (S.D.N.Y. Jan. 3, 2018) ............................... 3

*Tiffany & Co. v. Costco Wholesale Corp*
994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014) ................................................. 5

*Transgo, Inc. v. Ajac Transmission Parts Corp.*
768 F.2d 1001, 1022 (9th Cir. 1985), *cert. denied*, 474 U.S. 1059 (1986) .................. 12

*Triangle Ink and Color Co. v. Sherman-Williams Co.*
61 F.R.D. 634, 636 (N.D. Ill. 1974) ...................................................... 11

*Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act*
2010 WL 4942645 (C.D. Cal. July 29, 2010) ............................................... 13

*Tribune Co. v. Purcigliotti*
No. 93-7222, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) .............................. 11

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*
No. 01 CIV. 3016(AGS)(HB, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002) .................. 7

*Viacom Int'l, Inc. v. YouTube, Inc.*
No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, 2008 WL 3876142 (N.D. Cal. Aug.18, 2008) ..8,9

*Westernbank Puerto Rico v. Kachkar*
No. 07 Civ. 1606, 2009 WL 856392, at *4 (S.D.N.Y. Mar. 27, 2009) .......................... 3

## **CODES AND STATUES**

Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13

Fed. R. Civ. P. 37(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. Proc. 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 8, 10, 12

**PRELIMINARY STATEMENT**

On October 7, 2019, Gibson Brands, Inc. ("Gibson") served a subpoena on JAM Industries USA, LLC ("JAM USA" or "JAM") in connection with *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, Civil Action No. 4:19-cv-00358-ALM, which is currently pending in the Eastern District of Texas.  [A true and correct copy of the Subpoena is attached to Kurt Schuettinger, Esq. Declaration at Exhibit "**A**."]  Almost a month later and *17 hours* before the scheduled deposition, on November 5, 2019, JAM filed its Motion to Quash the subpoena.  [*See* Doc. No. 1.]

Despite being in possession of Gibson's subpoena for a month, JAM failed to timely contact Gibson or even attempt to meet and confer with Gibson's counsel regarding any objections or concerns regarding Gibson's subpoena.  On November 1, 2019 and again on November 4, 2019, JAM's counsel sent letters to Gibson's counsel informing Gibson of its intent to file a motion to quash the subpoena.  [*See* Schuettinger Declaration at ¶ 5.] Although no protective order was in place or requested at the time, JAM's letters stated that JAM would not be sending a representative to be deposed or provide materials requested in the subpoena.  [*See Id.*]  Notwithstanding its claim that a motion to quash would be filed on November 1, 2019 and again on November 4, 2019, the motion to quash was not filed until 5pm eastern standard time on November 5, 2019–less than 17 hours before the noticed deposition start time.  [*See* Schuettinger Declaration at ¶¶5-6.]

Gibson incurred significant costs in preparing for the properly noticed deposition that JAM failed to attend.  [*See* Schuettinger Declaration at ¶ 7.]  In addition, Gibson has expended legal resources in defending against this Motion to Quash despite most of the issues being of the nature that could be handled through answering with written objections and disclosing that the deposition witness did not have personal knowledge.  [*See Id.*]

1

Gibson was first notified that JAM's alleged deposition witness had no knowledge of the subject-matter set forth in Gibson's subpoena on the evening before the scheduled deposition, when JAM sent a copy of its Motion to Quash. [*See* Schuettinger Declaration at ¶ 6.]

For these reasons, as well as the additional reasons detailed below, the Court should deny JAM's Motion to Quash, order JAM to comply with the subpoena to the extent it can, and issue sanctions requiring JAM to reimburse Gibson for the costs associated with preparing the deposition and defending against this frivolous Motion to Quash.

## FACTUAL BACKGROUND

## LEGAL ANALYSIS AND ARGUMENT

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

In its Motion to Quash, JAM relies on arguments regarding the irrelevancy of the documents requested, compliance would cause an undue burden on JAM, and the requests require JAM to disclose confidential information. Federal Rules of Civil Procedure 45 provides that on a "timely motion, the court for the district where compliance is required must quash or modify a subpoena that … (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3)(A). Rule 45 additionally provides that "the court for the district

where compliance is required may, on motion, quash or modify the subpoena if it requires (i) disclosing a trade secret or other confidential research, development, or commercial information …" Fed. R. Civ. Proc. 45(d)(3)(B).

On a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Shaw v. Arena*, No. 17 Misc. 448, 2018 WL 324896, at *1 (S.D.N.Y. Jan. 3, 2018) (internal quotations omitted). In determining relevance, "a district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Westernbank Puerto Rico v. Kachkar*, No. 07 Civ. 1606, 2009 WL 856392, at *4 (S.D.N.Y. Mar. 27, 2009) (internal quotation marks omitted). "[W]here relevance is in doubt, the district court is to be permissive." *Id.*

Once relevance is established, "the movant bears the burden of demonstrating an undue burden." *Griffith v. United States*, No. M8-85, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). Determining whether a subpoena imposes an undue burden "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it," which "calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009); *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).

"Where a subpoena seeks discovery from a non-party, the district court may consider factors such as expense or inconvenience that compliance would cause." *Amphenol Corp. v. Fractus S.A.*, No. , 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019). "The trial court has broad discretion to determine whether a subpoena imposes an undue burden." *Id.*

> **1. Gibson's Subpoena Seeks Information Relevant to Armadillo's Genericide and Laches Claims and Defenses.**

In the case at issue, the defendant, Armadillo, pleads in its Amended Answer and Counterclaims that laches is applicable to any trademark infringement of Gibson's trademarks on its part. [*See* Amended Answer and Counterclaims attached as Exhibit "B" to Motion to Quash.] To support its laches defense, Armadillo claims that it, and its predecessors, has continuously and exclusively used the Dean trademarks in the United States since 1977. In addition, Armadillo claims that Gibson's Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790) and Gibson's Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805) are generic and were generic when Armadillo entered the U.S. market in 1977. [*See Id.*] To support this contention, Armadillo submitted photographs of guitars manufactured by JAM's predecessors. [*See Id.*]

Document requests and deposition topics Nos. 1-4[1] all relate to Armadillo's assertion that it has used the Dean trademarks continuously and exclusively in U.S. commerce since

---

[1] The Request to Produce Documents and Topics of Discussion were similar in nature. Topics Nos. 1-4 sought:
1. Washburn International, Inc.'s assertion in *Armadillo Distribution Enterprises, Inc., et. al. v. Washburn International, Inc.*, United States District Court, Middle District of Florida, Case No. 8:02-cv-01703-T-27Map (the "Armadillo Litigation") in its Answer, Affirmative Defenses, and Counterclaims filed by its attorneys Bienstock & Michael, P.C. that Concordia Investment Partners, Inc. committed fraud on the United States Patent and Trademark Office by claiming the DEAN trademarks had been used continuously in US commerce since 1977.
2. Washburn's December 6, 1995 Agreement with Skytronics Electrical, Inc. d/b/a Tropical Music Corp. regarding use of the DEAN marks.

1977 to support its laches defense. [*See* Subpoena attached to Schuettinger Dec. at Exhibit "**A**."] Evidence to the contrary, sought in Gibson's subpoena document requests and deposition topics 1-4, is imperative to Gibson's argument that laches is not a valid defense to Armadillo's infringement. [*Id.*]

Document request and deposition topic No. 5[2] relates to Gibson's policing of its trademarks in the marketplace. [*Id.*] This includes Gibson's reputation for policing its trademarks, as required by the Lanham Act. The circumstances surrounding Gibson's suit against JAM and the resulting Settlement Agreement and trademark license establish evidence that Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark are not generic.

Document request and deposition topic No. 6 relates to Armadillo's claim that Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark are generic. [*Id.*] Whether a trademark is generic is determined by the public perception of the trademark. *See Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014) ("When considering whether a mark is generic, the key determination to be made is the primary significance of the registered mark to the relevant public.")

---

3. Washburn's assertion in the Armadillo Litigation that Dean Guitars transferred title to its intellectual property rights to at least one third party other than Armadillo Distribution Enterprises, Inc., Concordia Investment Partners, Inc and Skytronics Electrical, Inc. in the late 1980s.
4. Washburn's settlement with Concorida Investments Partners, Inc. and Armadillo Distribution Enterprises, Inc. in the Armadillo Litigation, including the settlement term that certain assets will be held in trust for the parties by U.S. Music Corporation d/b/a The ML Trust.

[2] Topic No. 5 and Document Request No. 5 sought:
5. JAM Industries USA, LLC ("JAM") and its predecessor-in-interest's Settlement Agreement with Gibson regarding use of Gibson Trademarks.

Armadillo intends to rely on the circumstantial evidence of third party use to prove that the public views Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark as incapable of identifying Gibson as the source of the guitar. Request No. 6 merely requests JAM's use, distribution, marketing, advertising, and sales in the United States of the guitars manufactured by JAM's predecessors included in Armadillo's counterclaims.³ [*See* Subpoena at Request No. 6.] Additionally, Armadillo claims the identified third parties, including JAM, are not or were not licensees of Gibson at the time they used the V and Z shaped guitar designs. [*See* Amended Complaint and Counterclaim attached to JAM's Motion to Quash at Exhibit B, ¶ 15.] Gibson intends to use the information provided in Request No. 6 to prove this statement untrue.

JAM specifically claims that the Requests Nos. 2 and 4 of the Gibson subpoena are not relevant as they seek information that does not involve a guitar model/shape at issue in the Armadillo litigation, namely, the Dime Model Guitar. [*See* Motion to Quash at 7, 10.] Gibson refutes that the 1995 License and Settlement Agreement between Armadillo and JAM's predecessor-in-interest, Washburn, is irrelevant to the Armadillo litigation. Gibson intends to refute Armadillo's claim that it has used the Dean marks continuously and exclusively in U.S. commerce since 1977. In addition, the 1995 License and Settlement Agreement are evidence that Armadillo has not always used the DEAN mark in connection with its guitars.

---

³ Topic No. 6 and Document Request No. 6 sought:
  6. Jam and its predecessor-in-interest's use, distribution, marketing, advertising, and sale in the United States of the guitars depicted below:



The information requested in Gibson's subpoena is highly relevant to Armadillo's laches defense and the validity of Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark. As such, Gibson is entitled to seek the relevant information from JAM listed in Gibson's subpoena by Federal Rule of Civil Procedure 26(b)(1).

**2. Gibson's Subpoena Does Not Impose an Undue Burden on JAM.**

For its undue burden claim for document requests and deposition topics Nos. 1-4 JAM argues: 1) there are no employees with knowledge of the topics; 2) the information could all be obtained from Armadillo or is publicly available; and 3) compliance would inconvenience JAM. "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *3 (S.D.N.Y. May 19, 2005). "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Id.* at *2.

JAM's argument that Gibson's subpoena should be quashed because no employees have personal knowledge regarding JAM's predecessor-in-interest's lawsuit against Armadillo and subsequent settlement misses the point. Pursuant to the subpoena, JAM has a duty to designate a corporative representative to testify. [*See* Subpoena at Exhibit "A."] It is well established that "the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016(AGS)(HB, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002). Furthermore, despite claiming it has no individual with knowledge regarding categories 1-4 for deposition

7

testimony, JAM then provides the declaration of its CEO that states numerous relevant factual assertions regarding the very topics listed in categories 1-4 and then attaches relevant documents, including a license agreement. [*See* Declaration of Martin Szpiro attached as Exhibit D to Motion to Quash.] JAM has a duty to review its corporate records and designate at least one corporate representative to testify about the topics. *See Id.* ("Rule 30(b)(6) explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.")

Furthermore, neither JAM, nor its counsel, notified Gibson that JAM did not have an employee that could testify until the evening before the scheduled deposition. [*See* Schuettinger Dec. at ¶ 6.] At that late date, Gibson had already spent significant resources in preparing for the deposition. [*See* Schuettinger Dec. at ¶ 7.] Instead of promptly notifying Gibson, JAM decided it would take the relief it is now asking of this Court and fail to show up at the deposition all together.

JAM complains that document requests and deposition topics Nos. 1-4 should be quashed as they seek information that could be obtained from the defendant, Armadillo. [*See* Motion to Quash at 7-10.] "The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45 advisory committee's note. Gibson notes "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." *Coffeyville Res. Ref. Mktg. LLC v. Liberty Surplus Ins. Corp.*, No. 08-00017, 2008 U.S.

8

Dist. LEXIS 91224, at *5 (E.D. Ark. Nov. 6, 2008); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, at *10, 2008 WL 3876142 (N.D. Cal. Aug.18, 2008) ("[T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession.").

It is possible, even likely, that JAM is in possession of unique documents that would satisfy document requests and deposition topics Nos. 1-4 that are not in the possession of Armadillo. JAM has presented no argument or evidence as to why producing these documents would be unduly burdensome. [*See* Motion to Quash at 7-10, 19.] For any of the documents that JAM attached to its Motion to Quash, it is unclear to Gibson as to why JAM felt it needed to get this Court involved instead of just providing the documents in an answer to the requests for production of documents and things.

JAM objects to Request No. 5 as it claims all relevant documents are already in Gibson's possession and producing them would cause an undue burden on JAM. [*See* Motion to Quash at 10.] Gibson does not agree with this blanket statement. Request No. 5 requests all documents, communications, and records related to JAM and its predecessors-in-interests' Settlement Agreement with Gibson regarding use of the Gibson Trademarks. It must be read in conjunction with Topic Number 5 for the Deposition Subpoena that seeks a corporate representative to testify regarding the lawsuit and settlement with Gibson. [*See* Subpoena at Exhibit "**A**."]

Again, Defendant Armadillo has alleged that JAM and its predecessor-in-interest's alleged prior use of the Gibson Trademarks makes the Gibson Trademarks generic. [*See* Amended Answer and Counterclaim attached as Exhibit B to Motion to Quash.] Clearly, it is relevant to have a JAM corporate representative testify regarding any objection Gibson might have brought to JAM's attention and any resolution regarding that objection.

9

Furthermore, the JAM witness can then verify the accuracy of any Settlement Agreement between the parties.

JAM claims Request No. 6 is overly broad and much of the information was provided pursuant to a subpoena in recent litigation between Gibson and JHS. [*See* Motion to Quash at 10, 27.] Initially, the documents provided by JAM in the Gibson v. JHS lawsuit were provided under a protective order that required Gibson to destroy the documents at the end of the litigation. As such, Gibson is no longer in possession of any documents provided by JAM in the Gibson v. JHS lawsuit. JAM claims that Request No. 6 is overly broad because it requests "all documents, communications, and records related to JAM and its predecessor-in-interests' use, distribution, marketing, advertising, and sale in the United States of three guitar models and would require decades worth of information. JAM is incorrect that Request No. 6 does not impose any limitations. It limits the documents requested to the three guitar models provided by Armadillo to support its contention that Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark are generic. Again, this information is imperative to Gibson's claims it has valid trademarks that are not generic.

3. **Any Confidential Information Can Be Submitted Under the Protective Order in *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.***

JAM contends that Request No. 4 must be quashed because it requests a confidential settlement agreement. This Court is not required to quash confidential information requests as confidential information falls under Rule 45(d)(3)(B) where the court **"may**, on motion, quash or modify the subpoena if it requires (i) disclosing a trade secret or other confidential research, development, or commercial information …" Fed. R. Civ. Proc. 45(d)(3)(B) (emphasis added). There is a protective order in place in the Armadillo case that would protect any confidential information provided by JAM in response to Gibson's subpoena.

10

[*See* Schuettinger Declaration at ¶ 8.]  Protective orders are widely used in connection with both sensitive technical data, *see e.g., Triangle Ink and Color Co. v. Sherman-Williams Co.*, 61 F.R.D. 634, 636 (N.D. Ill. 1974) (technical trade secrets disclosed to opposing counsel and independent experts); *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410-11 (N.D.N.Y. 1973) (patent information disclosed to opposing attorneys and technical advisors); *Scoville Manufacturing Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 602 (D. Del. 1973) (patent information disclosed to opposing attorneys), and confidential business information, *see, e.g., Cipollone v. Liggett Group Inc.*, 106 F.R.D. 573, 585-86 (D.N.J. 1985) (confidential information released to opposing counsel for use in other cases); *Chesa International, Ltd. v. Fashion Associates, Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1977) (customer list disclosed to opposing counsel).

A Confidential Settlement Agreement is a distinction without a difference.  It is well settled that an agreement between two parties to keep materials confidential cannot block the disclosure of those materials to third parties in discovery.  *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009).  "Contracts bind only the parties.  No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off."  *Id.*; *see also ABF Capital Mgmt. v. Askin Capital*, No. 95-8905, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (explaining that "litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal"); *Tribune Co. v. Purcigliotti*, No. 93-7222, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery.").  Therefore, JAM's confidentiality argument is unavailing.

As Gibson has shown, the subpoena requests information that is decidedly relevant to Armadillo's laches defense and Gibson's claim it has a valid trademark (not generic) in Gibson's Flying V Body Shape Design® Trademark and Gibson's Explorer Body Shape Design® Trademark. JAM has failed to show that Gibson's subpoena requests would unduly burden JAM. Therefore, this Court should deny JAM's Motion to Quash and grant Gibson's counter-motion to compel and require JAM to produce documents and things in its possession to satisfy Gibson's noticed subpoena.

4. **This Court Should Hold JAM in Contempt and Issue Sanctions for Failing to Appear at the Properly Noticed Deposition.**

As detailed earlier, JAM failed to appear at the properly noticed deposition on November 6, 2019. Gibson respectfully requests this Court hold JAM in contempt and require JAM to pay the expenses incurred by Gibson in arranging the skipped deposition and preparation of the defense of JAM's Motion to Quash. This Court can issue sanctions against a party and counsel pursuant to the Court's inherent authority to manage the cases before it. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000), *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d (1991) (holding that a court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve orderly and disposition of cases"). Contempt is a discretionary finding of the court. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir. 1985), *cert. denied*, 474 U.S. 1059 (1986) (decision to hold a party in contempt of court is in sound discretion of the trial court).

"The court…may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). It is well settled that filing a motion to quash does not relieve one of the duty to attend a properly noticed deposition. *See Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) (filing motion

12

for protective order does not relieve party's "duty to appear for [] deposition"); *Kelly v. Old Dominion Freight Line, Inc.*, 376 Fed. Appx. 909, 913 (11th Cir. 2010) (same); *In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act*, 2010 WL 4942645 (C.D. Cal. July 29, 2010) ("Unless a party or witness files a motion for a protective order and seeks and obtains a stay *prior* to the deposition, a party or witness has no basis to refuse to attend a properly noticed deposition") (emphasis in original); *see also Koninlike Philips Elec. N.V. v. KXD Tech., Inc.*, 2007 WL 3101248, at *18 (D. Nev. 2007) ("Absent a protective order or an order staying the deposition, the party, including its officers or Rule 30(b)(6) deponents is required to appear for a properly noticed deposition."); *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) ("Counsel's view seems to be that a party need not appear if a motion under [now Rule 26(c) is on file, even though it has not been acted upon. . . . [Rule 26(c)] places the burden on the proposed deponent to get an order, not just to make a motion."). Indeed, "the filing of a motion under Rule 26(c) is not self-executing – the relief authorized under that rule depends on obtaining the court's order to that effect." Fed. R. Civ. P. 37(d) Advisory Committee's Note (relief from discovery requests "depends on obtaining a court order to that effect").

JAM did not file its Motion to Quash until the evening before the properly noticed deposition was scheduled despite having the subpoena in its possession for a month. [*See* Schuettinger Declaration ¶ 6.] Gibson incurred significant costs in preparing for the properly noticed deposition that JAM failed to attend and costs in responding to the Motion to Quash. [*See* Schuettinger Declaration ¶ 7.] Instead of notifying Gibson of JAM's discovery objections to the properly noticed deposition and production of documents and things, JAM chose to unnecessarily involve this Court by filing an unnecessary Motion to

Quash.  Gibson respectfully requests this Court to order JAM to reimburse Gibson the costs of defending this Motion to Quash and securing the preparations for the deposition.

## CONCLUSION

For the above reasons the Court should deny JAM's Motion to Quash, order JAM to compel with the subpoena to the extent it can, and issue sanctions requiring JAM to reimburse Gibson for the costs associated with preparing the deposition and defending against this frivolous Motion to Quash.

Respectfully submitted, this 12th day of November 2019.

        BATES & BATES, LLC

        /s/Kurt Schuettinger
        KURT SCHUETTINGER
        *PRO HAC VICE PENDING*
        1890 Marietta Boulevard NW
        Atlanta, Georgia 30318
        (404) 228-7439

        Attorneys for PLAINTIFF
        GIBSON BRANDS, INC.