UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JAM INDUSTRIES USA, LLC,

       Plaintiff,

  -v-                                               No.  19 MC 508-LTS

GIBSON BRANDS, INC.,

       Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER

       Before the Court is a motion brought by non-party JAM Industries USA, LLC ("JAM") to quash a subpoena served on it by Gibson Brands, Inc. ("Gibson").  The subpoena was issued in connection with a case pending in the United States District Court for the Eastern District of Texas ("the Underlying Litigation") between Gibson, the plaintiff in the Underlying Litigation, and Armadillo Distribution Enterprises, Inc. ("Armadillo").  (Docket Entry No. 5, at 1.)  JAM moves pursuant to Federal Rule of Civil Procedure 45 to quash the subpoena on the ground that it imposes an undue burden.  (Id.)  The matter is properly before this Court pursuant to Federal Rule of Civil Procedure 45(d)(3)(A).

       The Court has considered the submissions of both parties carefully and, for the following reasons, grants in part and denies in part the motion to quash the subpoena, denies Gibson's request for sanctions, and directs the parties to meet and confer in good faith to define, and promptly carry out, appropriately-focused discovery in a manner consistent with this Order.

<u>BACKGROUND</u>

In June 2019, Gibson, a manufacturer of musical instruments, brought the Underlying Litigation against Armadillo, claiming that Armadillo infringed on several of Gibson's trademarked guitar shapes.  As relevant here, Gibson claimed that Armadillo used the "Flying V" and the "Explorer" guitar shapes that had been trademarked by Gibson.  (Docket Entry No. 6, Exh. A, at ¶ 1.)  In its answer, Armadillo asserted the affirmative defense of laches.  (Docket Entry No. 6, Exh. B, at 14.)  In support of that defense, Armadillo alleged that it has used the Flying V and Explorer shapes in connection with its distinct DEAN trademarks since 1976 without objection by Gibson.  (<u>Id.</u>)  As another affirmative defense, Armadillo asserted that Gibson's alleged trademarks are invalid because the shapes are generic.  (<u>Id.</u> at 18.)  In support of its defenses and counterclaims seeking invalidation and denial of the marks, Armadillo alleged that extensive use of the Flying V and Explorer shapes by third parties, including JAM's predecessors, has resulted in a public perception that those shapes do not identify a single source, Gibson.  (<u>Id.</u> at 29.)

JAM is a non-party to the Underlying Litigation.  JAM owns the Hamer and Washburn brand of guitars, some past models of which are alleged to have infringed upon Gibson's guitar shape trademarks.  Hamer was founded in 1973, and was acquired by JAM's Canadian parent company JAM Industries in 2015 and subsequently organized under JAM.  (Docket Entry No. 6, Exhibit D, at ¶¶ 7-10, 16.)  Washburn was founded in 1974, merged with U.S. Music Corporation, and was subsequently acquired by JAM Industries and organized under JAM in 2009.  (<u>Id.</u> at ¶¶ 11-16.)

In 1995, Washburn entered into a settlement agreement with Skytronics Electrical, Inc. ("Skytronics"), a predecessor of Armadillo, in which Skytronics granted

Washburn the right to use the DEAN trademarks on a single guitar model, the Dime model guitar. (Docket Entry No. 6, Exh. E.) The Dime model guitar is not at issue in the Underlying Litigation. Gibson asserts, however, and JAM does not meaningfully dispute, that the use of the DEAN mark has been put at issue in the Underlying Litigation.

In 2002, Armadillo sued Washburn in the Middle District of Florida (the "Armadillo Litigation") over Washburn's production of the Dime model guitar. (Docket Entry No. 6, Exhs. F and G.) Armadillo's co-plaintiff in that litigation was Concordia Investment Partners, Inc. ("Concordia"), the alleged holder of the DEAN trademark. (Docket Entry No. 6, Exh. F, at ¶ 14.) Washburn's fifth affirmative defense in the Armadillo Litigation alleged that the plaintiffs in Armadillo's lawsuit had committed fraud in a trademark application prosecution as to, among other things, the alleged first date of usage of the trademark. (Id., Exh. G, at ¶ 87.) In 2004, the parties settled the Armadillo Litigation by entering into a confidential settlement agreement ("the Armadillo - Washburn CSA") and the court dismissed the action. (Id., Exh. I.)

In 2015, Gibson served a subpoena on JAM as a non-party to other trademark infringement litigation. (Docket Entry No. 6, Exh. J.) Gibson requested documents related to Washburn's V-shaped guitar (id.), which JAM provided. (Id., Exh. D, at ¶ 30.) In 2017, Gibson filed a complaint against JAM alleging, in part, infringement of Gibson's Flying V and Explorer shape guitars. (Id., Exh. D, at ¶ 31.) The parties settled the 2017 action by entering into a confidential settlement agreement. (Id., Exh. D, at ¶ 33.)

On October 7, 2019, Gibson served the instant subpoena on JAM, directing that a corporate representative be designated to be deposed concerning, and that "all documents, communications, and records [be produced that are] related to," the following topics:

1. "Washburn International, Inc's assertion in Armadillo Distribution Enterprises, Inc., et. al. v. Washburn International, Inc., United States District Court, Middle District of Florida, Case No. 8:02-cv-01703-T-27Map (the "Armadillo Litigation") in its Answer, Affirmative Defenses, Counterclaims filed by its attorneys Bienstock & Michael, P.C. that Concordia Investment Partners, Inc. committed fraud on the United States Patent and Trademark Office by claiming the DEAN trademarks had been continuously in US commerce since 1977.

2. Washburn's December 6, 1995 Agreement with Skytronics Electrical, Inc. d/b/a Tropical Music Corp. regarding use of the DEAN marks.

3. Washburn's assertion in the Armadillo Litigation that Dean Guitars transferred title to its intellectual property rights to at least one third party other than Armadillo Distribution Enterprises, Inc., Concordia Investment Partners, Inc. and Skytronics Electrical, Inc. in the late 1980s.

4. Washburn's settlement with Concordia Investment Partners, Inc. and Armadillo Distribution Enterprises, Inc. in the Armadillo Litigation, including the settlement term that certain assets will be held in trust for the parties by U.S. Music Corporation d/b/a the ML Trust.

5. Jam Industries USA, LLC ("Jam") and its predecessor-in-interests' Settlement Agreement with Gibson regarding use of Gibson Trademarks.

6. Jam and its predecessor-in-interests' use, distribution, marketing, advertising, and sale in the United States of the guitars depicted . . ."  (Docket Entry No. 6, Exh. C.)

The deposition was scheduled for November 6, 2019.  (Docket Entry No. 6, Exh. C.)  On November 1, 2019, JAM's counsel sent a letter to Gibson's counsel informing them that JAM would file a motion to quash the subpoena and that JAM would not produce the documents requested or send a representative to be deposed.  (Docket Entry No. 11, Exh. B.)  On the evening of November 5, 2019, JAM's counsel emailed Gibson's counsel a copy of the instant motion to quash in which, for the first time, JAM proffered a declaration of its CEO in which he certified that he has no personal knowledge of the matters identified in the first four requests of the subpoena, and that no current employee of JAM would have any information about the matters described in the subpoena.  (Docket Entry No. 11, at ¶ 6; Docket Entry No. 6, Exh. D, at ¶¶ 19-26.)  No JAM representative appeared at the November 6, 2019, deposition.  (Docket Entry No. 11, Exh. D.)  JAM asserts that the subpoena should be quashed in its entirety because it seeks irrelevant information and compliance would impose an undue burden on JAM.

## DISCUSSION

In federal civil litigation, the issuance and enforcement of subpoenas to non-parties are governed by Federal Rule of Civil Procedure 45.  Under Rule 45(d)(1), a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty . . ."   Furthermore, the Court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  To determine whether a subpoena imposes an undue burden, "courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the

particularity with which the documents are described and the burden imposed." <u>Citizens Union of City of New York v. Attorney General of New York</u>, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017) (internal citations omitted).  Courts "whose only connection with a case is supervision of discovery ancillary to an action in another district" are, however, cautioned to be "especially hesitant to pass judgment on what constitutes relevant evidence . . ." <u>In re Honeywell Int'l, Inc. Secs. Litig.</u>, 230 F.R.D. 293, 301 (S.D.N.Y.2003) (quoting <u>Trusl Sys. Corp. v. Hydro-Air Eng'g Inc.</u>, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987).

"The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." <u>Citizens Union</u>, 269 F. Supp. 3d at 139; <u>see also</u> <u>Malibu Media, LLC v. Doe</u>, No. 15-CIV-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) ("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)") (internal quotations omitted).  Under Rule 26(b), discovery may include any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1).  Where the party withholding discovery is a non-party to the underlying action, expense and inconvenience may be considered.  <u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).  However, an undue burden generally cannot be established by inconvenience alone.  <u>See</u> <u>Kirshner v. Klemons</u>, No. 99-CIV-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).  This Court has broad discretion to determine whether a subpoena imposes an undue burden.  <u>See</u> <u>Jones v. Hirschfeld</u>, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

Gibson, as the party seeking discovery from JAM, bears the initial burden of demonstrating that the information and documents sought are relevant and proportional to the needs of the case.  See Fed. R. Civ. P. 26(b)(1).  To the extent that Gibson has demonstrated relevance and proportionality, JAM bears the burden of demonstrating that production would impose an undue burden.  Citizens Union, 269 F. Supp. 3d at 139.

Request 1

The first subpoena request demands testimony and documents related to an assertion by Washburn (one of JAM's predecessors) in the Armadillo Litigation that Concordia (Armadillo's affiliate) had fraudulently claimed that the DEAN trademarks had been used continuously in U.S. commerce since 1977.  (Docket Entry No. 6, Exhibit C, at 5-6.)  Gibson argues that the assertion is relevant to the laches defense that Armadillo has asserted in the Underlying Litigation; Armadillo alleges that it has used the Flying V and Explorer guitar body shapes since 1976 in connection with the DEAN trademarks and that Gibson sat on its purported rights without objection.  (Docket Entry No. 6, Exh. B, at 14-17, 20.)  As noted above, Gibson also asserts that Armadillo has alleged in the Underlying Litigation that it has continuously and exclusively used the DEAN marks since 1977.  (Docket Entry No. 10, at 6.)  Gibson's request for documents and communications concerning the fraud allegation in the earlier litigation is facially relevant to the continuous use claim concerning the DEAN mark and the use of that mark in connection with the contested guitar body shapes.  Accordingly, Gibson has demonstrated that the information sought in the first subpoena request is relevant.  In that the request specifically targets documents and information relating to a particular contention in a pleading filed by JAM's predecessor company, the request also appears proportional.

JAM's principal claim of undue burden is rooted in its CEO's certification that no prior executives or officers of its predecessors are employed by JAM, that no current JAM employee has any personal knowledge of the subject matter of the subpoena requests, and that the CEO has no knowledge of the prior litigation and agreements involving Washburn and Armadillo beyond litigation records and the cited agreements.  (Docket Entry No. 5, at 15-16.)  However, any deponent appearing in response to this subpoena would appear pursuant to Federal Rule of Civil Procedure 30(b)(6), which requires that a public or private corporation named in a subpoena designate a person to testify on its behalf.  A witness designated pursuant to Rule 30(b)(6) need not have personal knowledge of the events at issue but, rather, "must testify about information known or reasonably available to the organization."  The designee testifies as a representative of the entity and must provide all the information known or reasonably available to the entity.  See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., No. 01-CIV-3016 (AGS) (HB), 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002).  Accordingly, JAM's assertion that its employees lack any personal knowledge of the events in question is insufficient to demonstrate that compliance would impose an undue burden on the company.

JAM next argues that the information sought concerns Armadillo and should be obtained from Armadillo directly through discovery as the opposing party in the Underlying Litigation.  (Docket Entry No. 5, at 16-17.)  The Court considers the availability of alternative means of securing the requested information in weighing the question of undue burden, see Amphenol Corp. v. Fractus, S.A., No. 19-MC-160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019), but there is no absolute rule that party sources must be exhausted before calling upon third parties and, as the request cites a position taken by JAM's predecessor in opposition to claims asserted by Armadillo, nothing in the request suggests that Armadillo would possess

information relevant to the formulation of Washburn's position.  While the information certainly "has to do with Armadillo," (Docket Entry No. 5, at 17), Gibson seeks the documents used by JAM's predecessor to support its assertion that the DEAN trademarks were not continuously used in the U.S. since 1977.[1]  JAM has again failed to meet its burden of demonstrating that the subpoena's first information request imposes an undue burden.

JAM also asserts generally that the documents Gibson seeks are not in a central location and are "not readily accessible."  (Docket Entry No. 18, at 7.)  JAM's conclusory assertion offers no facts from which the Court can assess the magnitude of any inconvenience the subpoena imposes, much less reach the conclusion that the burden that the requests pose is undue.  JAM has not met its burden of demonstrating that the inconvenience of gathering and producing documents, under what appear to be unremarkable circumstances, is undue.

Accordingly, the value to Gibson of the information sought in the first subpoena request outweighs the inconvenience that JAM has cited in resisting the request.  JAM's motion is denied insofar as it seeks to quash the first request.

Requests 2, 3, and 4

The second and fourth subpoena requests seek documents and information relating to a 1995 license agreement and the 2004 Armadillo-Washburn CSA, which are agreements that exclusively concern the Dime Model guitar, not the Flying V or Explorer shapes that are at issue in the Underlying Litigation.  (Docket Entry No. 5, at 7-8, 23; Docket Entry No.

---

[1] JAM's assertion that the relevant documents are available in the public record of the Armadillo Litigation because Washburn's assertions "speak for themselves" (Docket Entry No. 5, at 18) is an unduly narrow interpretation of the first subpoena request and is therefore similarly unavailing.

6, Exh. E.) Gibson argues that these agreements are relevant to whether Armadillo has used the DEAN trademarks continuously and exclusively since 1976. Gibson proffers that these agreements are evidence that Armadillo has not always used the DEAN trademarks in connection with its guitars, and also asserts that such evidence is relevant to Armadillo's laches defense and the issue of the validity of the Gibson marks that are at issue in the Underlying Litigation. (Docket Entry No. 10, at 6-7.) However, Gibson offers no further explanation of how the agreements, which do not concern the Flying V or Explorer shape guitars, are relevant to Armadillo's laches defense or the validity of the currently disputed marks, nor why it needs discovery beyond the texts of the agreements themselves. Thus, while Gibson has made a bare showing of at least partial relevance, it has not demonstrated that requests 2 and 4 are entirely relevant or, insofar as they broadly seek all documents, communications, and records related to the agreements, proportional to Gibson's legitimate informational needs.

Gibson makes a similar relevancy argument in support of its third subpoena request, which seeks all documents, other communications, and information regarding Washburn's assertion in the Armadillo Litigation that Dean Guitars transferred title to its intellectual property to a party other than Armadillo, Concordia, and Skytronics in the 1980s. (Docket Entry No. 6, Exh. E.) Gibson represents that it seeks to refute Armadillo's claim that it has <u>exclusively</u> used the DEAN trademarks since 1976. This bare showing of relevancy to an argument whose pertinence to the entire litigation is less than clear again fails, however, to demonstrate the requisite proportionality.

The motion to quash is granted with respect to requests 2, 3, and 4, without prejudice to narrowing and clarification of the requests.

Request 5

Subpoena request 5 seeks information and testimony concerning the settlement agreement between Gibson and JAM in the 2017 litigation in which Gibson alleged that JAM infringed on the Flying V and Explorer shape guitar trademarks at issue in the Underlying Litigation.  (Docket Entry No. 5, at 11.)  Gibson argues that information and documents related to this settlement agreement are relevant to Armadillo's claim that the Flying V and Explorer shapes are generic, will elicit information demonstrating Gibson's efforts to police its claimed marks, and also provide an opportunity for authentication of the settlement documentation.  (Docket Entry No. 10, at 5, 9-10.)  Gibson has made the requisite demonstration of relevance.  Since the request focuses on the settlement agreement, it appears to be sufficiently proportionate.

JAM argues that subpoena request 5 imposes an undue burden because all the information sought could be obtained from an alternative source, namely Gibson, since Gibson was a party to the settlement agreement and already possesses the relevant documents.  (Docket Entry No. 5, at 24-25.)  While Gibson clearly has access to the settlement agreement itself and may well know about all of the communications it directed to JAM, the request also seeks information internal to JAM, and thus is not one that exclusively seeks information that is already in Gibson's possession.  The motion to quash is denied as to request 5.

Request 6

Subpoena request 6 seeks testimony and documents concerning the "use, distribution, marketing, advertising, and sale" of Flying V and Explorer shaped guitars produced

by JAM and its predecessors.  (Docket Entry No. 6, Exh. C.)  Gibson argues that this information is relevant to Armadillo's defense that the Flying V and Explorer shapes are generic and have been generic since at least 1976.  (Docket Entry No. 10, at 5.)  The breadth of information sought is, however, disproportional to the genericism issue, particularly as it encompasses "use" of the contested shapes.  Whether a trademark is generic is determined by reference to the public perception of that trademark.  See Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 214, n.2 (2d Cir. 2003) ("[e]ssentially, a mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product").  Accordingly, public-facing use, distribution, marketing, advertising, and sale of allegedly infringing guitar shapes is relevant and properly discoverable.

Subpoena request 6 sweeps even more broadly, however, violating the proportionality principle and imposing an undue burden insofar as it seeks all documents, communications and records relating to what appears to be every aspect, both internal and external, of the activities of JAM and its predecessors involving the disputed shapes over a period approaching fifty years.  (Docket Entry No. 5, at 27; Docket Entry No. 6, at Exh. C.) Where a subpoena requires all documents related to an entity's business without limitation to the scope of relevant information, courts routinely grant motions to quash or modify.  See, e.g., Concord Boat, 169 F.R.D. at 51 (quashing subpoena that requested documents from a non-party for a ten-year period without limitation to the aspect of the business that was the focus of litigation); Alcon Vision, LLC v. Allied Vision Group, Inc., No. 19-MC-384 (AT), 2019 WL

4242040, at *3 (S.D.N.Y. Sept. 6, 2019) (quashing subpoena that requested "all documents in connection to several topics" without further qualification.)[2]

The motion to quash is accordingly granted with respect to request 6, without prejudice to appropriate narrowing.  The parties will be directed to meet and confer to resolve their differences with respect to the quashed requests so as to facilitate efficient and appropriate production of documents and information.

Sanctions

Gibson requests that the Court hold JAM in contempt and issue sanctions for JAM's failure to appear at the scheduled deposition.  (Docket Entry No. 10, at 12.)  This Court has discretion to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g).  However, the advisory committee noted that "it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena."  Fed. R. Civ. P. 45(g) advisory committee's note to 2018 amendment.  Indeed, courts in this district generally find non-parties in contempt upon failure to comply with a subpoena only when they also violate a court order to do so.  See, e.g., Continental Ins. Co. v. Atlantic Cas. Ins. Co., No. 07-CIV-3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) (sanctions imposed where non-party was properly served, failed to

---

[2]  JAM argues that parts of subpoena request six impose an undue burden because they demand information that is already in Gibson's possession, specifically documents related to the depicted Washburn guitar that were provided to Gibson by JAM pursuant to a subpoena in prior litigation. (Docket Entry No. 5, at 28.)  Gibson proffers, however, that those documents were destroyed pursuant to a protective order entered in that prior litigation (Docket Entry No. 10, at 10), and JAM does not argue otherwise.

attend the deposition, failed to comply with the court's order to comply with the subpoena, and failed to move to quash the subpoena).

Here, the deposition served upon JAM, a non-party, was issued without court involvement and no court order was violated when the deposition did not go forward. Additionally, JAM had notified Gibson several days before the scheduled deposition that it would not attend the deposition and would move to quash the subpoena.  (Docket Entry No. 11, at ¶ 5.)  While such an approach to responding to a subpoena is not to be encouraged, the reality is that Gibson had an opportunity to cancel the deposition arrangements and even to reach out to seek to avoid motion practice.  As Gibson notes in its opposition papers to the instant motion, "most of the issues [raised are of] the nature that could be handled through answering with written objections and disclosing that the deposition witness did not have personal knowledge." (Docket Entry No. 10, at 1.)  The Court concludes that neither party has conducted itself in an exemplary fashion in connection with this discovery dispute.  Accordingly, the Court concludes that the imposition of sanctions would not be an appropriate exercise of the Court's discretion pursuant to Rule 45(g).

### DIRECTION TO MEET, CONFER, AND MAKE APPROPRIATELY TAILORED DISCOVERY

To the extent that the Court has granted the motion to quash, it is without prejudice to narrowing, clarification and/or reformulation of the subject requests.  To avoid an inefficient additional round of requests, objections, and potential motion practice, the parties are directed to meet and confer promptly in good faith to discuss the requests and the objections that have not been overruled above, with the goal of reaching agreement as to the scope of documents to be produced promptly, and as to the extent, if any, to which deposition testimony is necessary.

In this connection, the parties should explore whether stipulations or declarations may suffice to document facts. Documents must be produced promptly, in a manner consistent with the principles set forth in this Memorandum Order, and any deposition, declarations, or stipulations must also be completed promptly. The parties must also ensure that any court-ordered confidentiality restrictions are respected.

The parties must file a joint status report concerning compliance with the subpoena requests and any reformulations thereof by **September 18, 2020**.

### CONCLUSION

For the foregoing reasons, the Court grants JAM's motion insofar as requests 2, 3, 4, and 6 are quashed without prejudice to reformulation. The Court denies the motion as to requests 1 and 5.

The Court denies Defendant's request for sanctions in its entirety.

The parties are directed to meet, confer, and make discovery as detailed above, and to file a joint status report by **September 18, 2020**.

This Memorandum Order resolves Docket Entry Numbers 2 and 4.

SO ORDERED.

Dated: New York, New York
July 15, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge